IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN (DUBUQUE) DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 22-CR-1002 |
| | ) |
| MATTHEW DANIEL BIRCH, | ) |
| | ) |
| Defendant. | ) |

**UNITED STATES RESISTANCE TO DEFENDANT'S
MOTION FOR DOWNWARD VARIANCE**

The United States hereby resists defendant's motion for a downward variance, filed at Docket 57.

**I.  Legal Framework**

When fashioning a sentence that is sufficient but not greater than necessary, the Court must consider the factors enumerated in 18 U.S.C. § 3553(a). Those factors include but are not limited to: (1) the nature of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; and (3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a). A sentence within the guidelines range is presumptively reasonable. *See United States v. Coleman*,

635 F.3d 380, 382 (8th Cir. 2011) (citing *United States v. Bauer*, 626 F.3d 1004, 1010 (8th Cir. 2010)).

## II. The Offense Conduct

The nature of the offense in this case is serious, as it involves defendant's involvement with more than a pound of ice methamphetamine.

This case consists of defendant's pattern of distributing methamphetamine from 2019 until 2021. Throughout 2019, defendant sold six ounces of ice methamphetamine to a confidential informant (Docket 46, PSR at ¶ 8). In December 2019, defendant was driving a vehicle with 36 grams of ice methamphetamine (PSR at ¶ 5), and he also sold 24 grams of ice methamphetamine to a confidential informant (PSR at ¶¶ 6–7). In November 2021, law enforcement initiated a traffic stop on a vehicle that defendant was driving. (PSR at ¶ 12.) Defendant backed up into an officer's vehicle, and he then attempted to drive around other officers to evade the police. (PSR at ¶ 12.) Law enforcement had to place stop sticks under defendant's tires to prevent him from fleeing. (PSR at ¶ 12.) In the car and belonging to defendant were $39,729 in drug proceeds, 279.69 grams of ice methamphetamine, and a drug ledger. (PSR at ¶ 15.) In total, over the course of three years, defendant played a critical role in distributing at least 510.15 grams of ice methamphetamine. (PSR at ¶ 18.)

The November 2021 traffic stop is not the only example of defendant's troubling history of dangerous interactions with law enforcement. In April 2020, defendant was ordered to stop by law enforcement, but he did not listen and had to

be forcefully taken to the ground and secured in handcuffs; on defendant's person, officers located a large knife, a pipe, and $6,210 in drug-trafficking proceeds. (PSR at ¶ 10.) In April 2021, defendant, driving without a valid driver's license and with unlawfully tinted windows, eluded the police by driving erratically and at high speeds (up to 66 miles per hour in a 25 mile-per-hour zone). (PSR at ¶ 9.) While conducting this dangerous behavior, defendant drove near an elementary school while there were numerous children outside. (PSR at ¶ 9.) In September 2021, after officers initiated a traffic stop on a vehicle that defendant was driving, defendant gave a false identity and drove away. (PSR at ¶ 11.) This sparked a high-speed pursuit, in which defendant drove 100 miles per hour in a 40 mile-per-hour zone. (PSR at ¶ 11.)

### III. Other Aggravating Factors

In addition to the serious nature and circumstance of the offense, there are other aggravating factors. First, defendant's criminal history is aggravating. Defendant has multiple violent convictions, including going armed with intent in 1998 (PSR at ¶ 34), false imprisonment in 2008 in which defendant hit someone in the face and nose several times (PSR at ¶ 37), assault with injury in 2008 (PSR at ¶ 38), and domestic abuse assault causing bodily injury and harassment in the first degree in 2012 in which defendant got upset when someone refused to hand him keys to her vehicle so he pulled her to the ground by her hair, punched her while she was down, and later violated a no-contact or protective order (PSR at ¶ 40).

3

Defendant has multiple convictions for interference with official acts in 2014 and 2015 (PSR at ¶¶ 42–43), and eluding once in 2020 and twice in 2021 (PSR at ¶¶ 45–76).

Defendant's criminal history also includes a 2018 conviction for conspiracy in which he asked a friend to claim a gambling jackpot and then give it to him so he could avoid paying child support fees. (PSR at ¶ 44.)

As for defendant's criminal history related to substance abuse, he has an operating while intoxicated or drugged conviction in 2012 (PSR at ¶ 39), and a 2001 conviction for possession of marijuana (PSR at ¶ 36).

In addition, defendant has a poor history on supervised release. While under supervision, he has failed to maintain employment, tested positive for methamphetamine several times, failed to attend an appointment with his supervising officer, violated a no-contact or protective order, and committed new law violations including the instant offense. (PSR at ¶¶ 37, 40, 44, 49.)

Defendant has committed crimes for over two decades, and he has not showed signs of slowing down. His lengthy criminal history is violent and indicative of his lack of respect for rules and the law.

Second, defendant's substance abuse, though identified by defendant as a mitigating factor (Docket 57, Defendant's Sentencing Memorandum at 9), should be considered an aggravating factor. As an initial matter, the United States Sentencing Guidelines note that "substance abuse is highly correlated to an increased propensity to commit crimes" and so it "ordinarily is not a reason for a

4

downward departure." USSG §5H1.4. Moreover, a district court has wide discretion to consider a defendant's history of drug abuse as an aggravating factor rather than a mitigating factor. *See United States v. Poore*, 838 F. App'x 217, 218 (8th Cir. 2021) ("The weight the district court gave to Poore's extensive history of drug abuse, considering it as an aggravating factor rather than a mitigating factor, is within the district court's wide discretion."); *United States v. Henry*, 770 F. App'x 309, 311 (8th Cir. 2019) ("It was within the district court's discretion to consider Henry's substance abuse history an aggravating factor."); *United States v. Smith*, 656 F.3d 821, 826 (8th Cir. 2011) ("The district court considered several relevant aggravating factors: that Smith had a history of alcohol and substance abuse …"). In *United States v. Hendrickson*, the Court acknowledged that addiction could be aggravating in certain circumstances and that it is not "limitlessly mitigating," especially when a defendant has had numerous opportunities for treatment. 25 F. Supp. 3d 1166, 1175 (N.D. Iowa 2014).

Here, defendant's substance abuse is aggravating. He has abused multiple drugs (PSR at ¶¶ 87–91), and he ended up in a ditch after operating a vehicle while intoxicated or drugged (PSR at ¶ 39). Defendant has had treatment opportunities in at least three substance abuse centers (PSR at ¶ 92), though he has not stayed sober. Though defendant argues that his "conduct is born out of addiction," (Defendant's Sentencing Memorandum at 9), the amount of methamphetamine that he was involved with and his lack of employment show that he was taking financial advantage of others who had a similar addiction to methamphetamine. He was not

5

Case 2:22-cr-01002-LTS-MAR   Document 58   Filed 04/07/23   Page 5 of 8

distributing methamphetamine solely to support his habit. Defendant's substance abuse implicates the sentencing objectives of deterrence, protection of the public, and rehabilitation, and it is an aggravating rather than mitigating factor.

Third, defendant's inability to care for his children is aggravating. The Eighth Circuit has noted that failure to pay child support is an aggravating factor at sentencing. *See Smith*, 656 F.3d at 826. Here, defendant has several children, but according to records from the Social Security Administration, he has zero reported earnings in the past ten years. (PSR at ¶ 100.) That is not enough legitimate income to support children. Indeed, he owes a total of $58,784.25 in outstanding child support for the care of his children. (PSR at ¶ 102.) Furthermore, when defendant won a gambling jackpot, he tried to get a friend to claim the prize so that he could avoid paying child support. (PSR at ¶ 44.) Defendant's failure to care for his children is aggravating.

## IV. The Aggravating Factors Outweigh Mitigating Factors in this Case, Such that a Motion for a Downward Variance is Not Appropriate

Some mitigating factors may apply in this case. For example, defendant's childhood relationship with his father (PSR at ¶¶ 65, 67), mental health (PSR at ¶¶ 82–86), and his acceptance of responsibility (Defendant's Sentencing Memorandum at 9), are mitigating.

But the Court should reject defendant's argument that he is entitled to a downward variance because there is a disparity in how the Sentencing Guidelines treat methamphetamine mixture compared to ice methamphetamine. (Defendant's

6

Case 2:22-cr-01002-LTS-MAR   Document 58   Filed 04/07/23   Page 6 of 8

distributing methamphetamine solely to support his habit. Defendant's substance abuse implicates the sentencing objectives of deterrence, protection of the public, and rehabilitation, and it is an aggravating rather than mitigating factor.

Third, defendant's inability to care for his children is aggravating. The Eighth Circuit has noted that failure to pay child support is an aggravating factor at sentencing. *See Smith*, 656 F.3d at 826. Here, defendant has several children, but according to records from the Social Security Administration, he has zero reported earnings in the past ten years. (PSR at ¶ 100.) That is not enough legitimate income to support children. Indeed, he owes a total of $58,784.25 in outstanding child support for the care of his children. (PSR at ¶ 102.) Furthermore, when defendant won a gambling jackpot, he tried to get a friend to claim the prize so that he could avoid paying child support. (PSR at ¶ 44.) Defendant's failure to care for his children is aggravating.

## IV. The Aggravating Factors Outweigh Mitigating Factors in this Case, Such that a Motion for a Downward Variance is Not Appropriate

Some mitigating factors may apply in this case. For example, defendant's childhood relationship with his father (PSR at ¶¶ 65, 67), mental health (PSR at ¶¶ 82–86), and his acceptance of responsibility (Defendant's Sentencing Memorandum at 9), are mitigating.

But the Court should reject defendant's argument that he is entitled to a downward variance because there is a disparity in how the Sentencing Guidelines treat methamphetamine mixture compared to ice methamphetamine. (Defendant's

Sentencing Memorandum at 2–9.)  Although district courts can disregard a particular sentencing guideline on policy grounds, they are not required to do so. In *United States v. Beckman*, the Eighth Circuit stated: "Yet, even assuming that a sentencing court *may* disregard [a guideline] on pure policy grounds, the United States Supreme Court has not held that a district court *must* disagree with any sentencing guideline, whether it reflects a policy judgment of Congress or the [Sentencing] Commission's characteristic empirical approach."  787 F.3d 466, 499 (8th Cir. 2015) (internal quotation marks omitted).  Here, because the aggravating facts are serious, the government asks that the Court decline to vary downward based on the disparity between the Guidelines' treatment of ice methamphetamine and mixture methamphetamine.

Finally, the United States acknowledges defendant's numerous medical conditions as serious (PSR at ¶¶ 74–81), however, those conditions have a limited mitigating impact.  Defendant is currently in poor health.  While his medical conditions may impact the defendant's life expectancy, varying downward will not impact his location or health in the immediate future, because he is going directly to prison.  Furthermore, the Bureau of Prisons has adequate medical facilities, and it employs doctors, nurses, and other personnel with expertise in diagnosing and treating medical conditions.  The Bureau of Prisons will also be well-suited to ensure that defendant is compliant with the doctor's orders and that he maintains his sobriety.

In total, the numerous aggravating factors outweigh any mitigating elements. Accordingly, the government requests under 18 U.S.C. § 3553(a) that the Court deny defendant's motion for a downward variance.

Respectfully submitted,

TIMOTHY T. DUAX
United States Attorney

By: */s/ Devra T. Hake*

DEVRA T. HAKE
Special Assistant United States Attorney
111 Seventh Avenue SE, Box 1
Cedar Rapids, Iowa 52401
Tel.: (319) 363-6333
Fax: (319) 363-1990
Devra.Hake@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2023 I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the parties or attorneys of record.

UNITED STATES ATTORNEY

BY: /s/ mas